IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| SAMANTHA BARRETT, INDIVIDUALLY AND AS NEXT FRIEND OF JACOB BARRETT, A MINOR CHILD, | § § § § § | |
| Plaintiffs, | § § | |
| VS. | § § § | CIVIL ACTION NO.  5:13-cv-1155 |
| COMPASS WELL SERVICES, L.L.C. and COMPASS WELL SERVICES CO-INVEST, L.L.C., | § § § § | |
| Defendants. | § | JURY REQUESTED |

## PLAINTIFFS' ORIGINAL COMPLAINT

TO THE HONORABLE COURT:

Samantha Barrett, Individually and as Next Friend of Jacob Barrett, a Minor Child, file this Original Complaint complaining of Defendants, Compass Well Services, L.L.C. and Compass Well Services Co-Invest, L.L.C., and as claim for relief state:

## NATURE OF THE ACTION

1. This is a civil action arising out of the death of Billy Gene Barrett, Jr., Deceased, and is brought in accordance with the provisions of the Texas Constitution, Article XVI, Sec. 26 and, to the extent applicable, Tex. Civ. Prac. & Rem. Code §§ 71.002 - 71.004, by Samantha Barrett, on behalf of herself individually, and as the Next Friend and representative of Jacob Barrett, a minor child, (collectively "Plaintiffs") in order to recover exemplary damages from Compass Well Services, L.L.C. and Compass Well Services Co-Invest, L.L.C., (collectively

"Defendants") whose gross neglect led to the needless, tragic and untimely death of Billy Gene Barrett, Jr., Deceased.

## PARTIES

2. Plaintiff Samantha Barrett is a natural person residing in Cove, Polk County, Arkansas and is the surviving widow of Billy Gene Barrett, Jr. Deceased, and the mother of Jacob Barrett, a minor child. Plaintiff Samantha Barrett appears in this action individually and as Next Friend of Jacob Barrett.

3. Plaintiff Jacob Barrett is a natural person residing in Cove, Polk County, Arkansas and is the surviving minor child and heir of the body of Billy Gene Barrett, Jr. Deceased. Plaintiff Jacob Barrett appears in this action through his mother, Samantha Barrett, acting as his Next Friend.

4. Defendant Compass Well Services, L.L.C. is a domestic limited liability company licensed to do business in the state of Texas. Defendant Compass Well Services, L.L.C. may be served with Summons and a copy of Plaintiffs' Original Complaint by serving its registered agent, Buddy Petersen, at its registered address of 4100 International Plaza, Suite 500, Fort Worth, Texas 76109.

5. Defendant Compass Well Services Co-Invest, L.L.C. is a domestic limited liability company licensed to do business in the state of Texas. Defendant Compass Well Services Co-Invest, L.L.C. may be served with Summons and a copy of Plaintiffs' Original Complaint by serving its registered agent, Colin Raymond, at its registered address of 8851 Camp Bowie West Blvd., Suite 275, Fort Worth, Texas 76116.

## JURISDICTION

6. Plaintiffs are citizens of the state of Arkansas. Defendants are citizens of the state of Texas, where they were organized, formed or incorporated and where they maintain their principal place of business and company headquarters. Accordingly, this Court has diversity of citizenship jurisdiction over this action pursuant to 28 U.S.C. §1332 in that Plaintiffs and Defendants are citizens of and domiciled in different states and the amount in controversy, exclusive of interest and costs, exceeds the sum or value of $75,000.00.

## VENUE

7. A substantial part of the events or omissions giving rise to Plaintiffs' claims for relief occurred in the Western District of Texas. Accordingly, venue of this civil action is properly placed in the Western District of Texas pursuant to 28 U.S.C. §1391(b)(2).

8. In addition, venue of this action in the Western District of Texas is proper pursuant to 28 U.S.C. §1391(b)(1), in that Defendants are residents of the Western District of Texas. Defendants are Texas limited liability companies and for purposes of establishing venue, an entity with the capacity to sue and be sued in its common name under applicable state law is deemed to reside in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question. 28 U.S.C. §1391(c)(2). Under Federal Rule of Civil Procedure 17, the capacity of a party that is not an individual or a corporation (such as a limited liability company) to sue or be sued is determined by the law of the state where the court is located. Under the Texas Business Organizations Code, a domestic limited liability company may sue or be sued in its common name. Accordingly, Defendants can sue or be sued in their common name under Texas law, and therefore are deemed to reside in any judicial district in which they are subject to personal jurisdiction.

9. This Court has personal jurisdiction over Defendants because they have engaged in substantial, continuous and systematic business activities and contacts within the state of Texas by conducting business within the state of Texas and by recruiting and employing persons within the state of Texas; such that being subjected to suit in the Western District of Texas will not offend traditional notions of fair play and substantial justice. Moreover, Defendants maintain business premises in the Western District of Texas and Billy Gene Barrett, Jr., Deceased was hired by Defendants to perform labor at locations situated within the Western District of Texas. Further, this action arises out of the employment relationship that was created in the state of Texas when Defendants recruited and hired Billy Gene Barrett, Jr., Deceased to work in the state of Texas, and specifically assigned him to work in the Western District of Texas. Accordingly, Defendants are subject to personal jurisdiction — and therefore reside — in the Western District of Texas.

## AGENCY/RESPONDEAT SUPERIOR

10. Whenever it is alleged in this Complaint that Defendants did any act, omission or thing, it is meant that Defendants' employees, agents, officers, servants, managers, vice-principals, apparent agents, ostensible agents, agents by estoppel and/or representatives did such act, omission or thing and that at the time such act, omission or thing was done it was done with the actual or implied knowledge of Defendants or was done with the full authorization, approval or ratification of Defendants or was done in the normal and routine course and scope of agency or employment of Defendants' employees, agents, officers, servants, managers, vice-principals, apparent agents, ostensible agents, agents by estoppel and/or representatives.

## FACTUAL BACKGROUND

11. Just prior to midnight on or about January 16, 2012, Billy Gene Barrett, Jr. ("Barrett") and a fellow passenger, Dakota Shane Sabin ("Sabin"), were occupying a GMC Sierra 2500 pick-up truck driven by Shawn Patrick Nichols ("Nichols") that was traveling north on Interstate 37 in Atascosa County, Texas. All occupants of the Nichols vehicle were employees of Defendants who had recently completed a long overtime shift that had stretched into the late night and were traveling to their homes in the state of Arkansas. At or near mile marker 104 on Interstate 37 in Atascosa County, Texas, Nichols fell asleep at the wheel, veered off the road way and hit a road sign, causing him to lose control of the vehicle he was operating and violently crash. The crash fatally injured both Barrett and Sabin.

12. Nichols, Sabin and Barrett had just completed their overtime shift for Defendants at or near 11:00 p.m. the evening of January 16, 2012 and because Defendants did not provide adequate on-site accommodations or off-site planning for their rest and sleep after the completion of their long shift, Nichols decided to leave Defendants' yard in South Texas in order to begin the long journey home to Arkansas. Although Nichols was exhausted and tired from the long shifts he had worked that day (and that entire week) Defendants nonetheless allowed Nichols, Barrett and Sabin to depart Defendants' premises with full knowledge that they intended to drive through the night and early morning hours in order to return to their homes in Arkansas.

13. Specifically, William Mattucks ("Mattucks"), a management employee of Defendants' who had supervisory authority over Nichols, Barrett and Sabin, was advised by Nichols of his plan to stay up the rest of night in order to drive himself and Barrett and Sabin back to Arkansas. Mattucks not only failed to prevent Nichols from undertaking this course of

action but actively participated in the plan by agreeing to accompany Nichols and his passengers on the drive back to Arkansas; albeit in a separate vehicle owned by Mattucks.

14. In addition, as the supervisor of Nichols, Barrett and Sabin, Mattucks was aware of the number of hours that these men had worked that week (and the day and night of the accident in particular) and that they needed sleep and rest prior to embarking on an extended motor vehicle journey. Mattucks was also aware that Defendants had not provided adequate rest and sleeping arrangements for Nichols, Barrett and Sabin, either on Defendants' premises or offsite, after they had finished their work shift and returned to Defendants' yard. Nevertheless, Mattucks allowed Nichols, Barrett and Sabin to depart Defendants' premises in Nichols' vehicle on the night of the fatal crash despite well knowing that Nichols intended to drive himself and his passengers back to Arkansas while in a fatigued and sleep deprived condition.

15. Nichols, the driver of the vehicle occupied by Barrett and Sabin, was acting within the course and scope of his employment with Defendants at the time of the occurrence of the motor vehicle accident that claimed the lives of Barrett and Nichols.

16. Nichols, the driver of the vehicle occupied by Barrett and Sabin, was acting within the course and scope of his employment with Defendants at the time he made the decision to leave Defendants' premises close to midnight for the drive home to Arkansas despite knowing the number of hours that he had worked and knowing that he would be operating a motor vehicle in an exhausted and sleep deprived condition for an extended period of time.

17. Mattucks, the supervisor of Nichols, Barrett and Sabin and a management employee of Defendants, was acting within the course and scope of his employment with Defendants at the time he allowed or refused to prevent and subsequently joined in Nichols' decision to leave Defendants' premises close to midnight for the drive home to Arkansas despite

knowing the number of hours that Nichols had worked and knowing that Nichols would be operating a motor vehicle in an exhausted and sleep deprived condition.

18. Mattucks, the supervisor of Nichols, Barrett and Sabin and a management employee of Defendants, authorized, ratified, condoned or approved Nichols' decision to leave Defendants' premises close to midnight for the drive home to Arkansas despite knowing the number of hours that Nichols had worked and knowing that Nichols would be operating a motor vehicle in an exhausted and sleep deprived condition.

19. The above described conduct of Defendants, as corporate entities and acting through at least their employees Mattucks and Nichols, was a direct and foreseeable cause of the events that led to the motor vehicle accident in question and a substantial factor in bringing about the deaths of Barrett and Sabin.

## CLAIM FOR RELIEF

### Count 1 – Constitutional Gross Neglience/Wrongful Death Claim

20. Plaintiffs re-allege paragraphs 11 through 19 of this Complaint and say that Defendants, as corporate entities and acting by and through Mattucks, Nichols or other employees, managers, vice-principals and representatives of Defendants, are guilty of the following acts or omissions that include, but not limited to, the following:

    a. Driving while fatigued or sleep deprived;

    b. Faulty evasive action;

    c. Failing to furnish Defendants' employees a reasonably safe place to work;

    d. Failing to exercise care to select careful and competent fellow servants or co-employees;

    e. Failing to properly supervise and/or train employees;

      f.      Failing to adopt, implement and enforce rules, regulations and safety policies regarding Defendants' employees' operation of motor vehicles in the course and scope of their employment while fatigued, sleep deprived or without adequate rest;

      g.      Failing to warn Defendants' employees of the hazards of operating a motor vehicle while fatigued, sleep deprived or without adequate rest or of occupying a motor vehicle operated by a co-employee that is fatigued, sleep deprived or without adequate rest;

      h.      Failing to monitor the number of hours worked and the driving time of Defendants' employees;

      i.      Failure to plan for, provide or furnish Defendants' employees with adequate on-site accommodations or off-site accommodations for their rest and sleep after completion of overtime shift work;

      j.      Allowing Nichols to operate a motor vehicle when fatigued, sleep deprived or without adequate rest on the occasion in question; and

      k.      Other acts or omissions of gross negligence which will become apparent as discovery progresses.

These acts or omissions of Defendants, as outlined above, were a proximate cause of the motor vehicle accident in question and the resulting injuries and deaths of Barrett and Sabin.

      21.     Plaintiffs re-allege paragraphs 11 through 20 of this Complaint and say that the acts or omissions of Defendants as described above, when viewed objectively from Defendants' standpoint at the time of the occurrence in question, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others.

      22.     Plaintiffs re-allege paragraphs 11 through 21 of this Complaint and say that Defendants, including Nichols, Mattucks and other supervisory and management personnel of Defendants, had actual subjective awareness of the extreme risk posed by the above described acts or omissions, including the extreme risk of allowing persons to operate motor vehicles while tired, fatigued or sleep deprived and without adequate time for rest after working long overtime

shifts for Defendants. Defendants nevertheless proceeded to commit the acts or omissions described above with a conscious indifference to the rights, safety and welfare of Barrett and other employees of Defendants, as well as other motorists traveling the same roadways as Defendants' employees.

23. Plaintiffs re-allege paragraphs 11 through 22 of this Complaint and say that the acts and omissions of Defendants as described above constitute gross negligence; for which gross negligence Plaintiffs seek the recovery of exemplary damages against Defendants.

## EXEMPLARY DAMAGES

24. Plaintiffs re-allege paragraphs 11 through 23 of this Complaint and say that this gross negligence/wrongful death claim is asserted herein pursuant to Article 16, Sec. 26 of the Texas Constitution and, to the extent applicable, Tex. Civ. Prac. & Rem. Code §§71.002 - 71.004. The action is maintained by Plaintiff Samantha Barrett, Individually, and as Next Friend of Plaintiff Jacob Barrett, a Minor Child, as statutory wrongful death beneficiaries, to recover exemplary damages to which they are justly entitled as result of the grossly negligent acts or omissions of Defendants as described above. Although Plaintiffs recognize that they may not recover actual damages from Defendants due to the operation of the exclusive-remedy provisions of the Texas Workers' Compensation Act, Plaintiffs have nevertheless suffered enormous actual damages as a result of the death of Barrett including, but not limited to, past and future grief, bereavement, torment, mental anguish, pecuniary loss, loss of inheritance, and loss of companionship, society, maintenance, and support. However, Plaintiffs do not seek the recovery of these actual damages in this action, but plead same solely as a basis for calculating exemplary damages, in the event it is determined by the Court that an amount of actual damages is necessary or required in order to arrive at an appropriate award of exemplary damages.

25.     Plaintiffs re-allege paragraphs 11 through 24 of this Complaint and say that Defendants are liable as entities to Plaintiffs for exemplary damages as a result of Defendants' own organizational gross negligence in committing certain of the acts or omissions described above that constitute a breach of non-delegable duties owed by Defendants to Barrett and Defendants' other employees or by authorizing, ratifying or approving of the grossly negligent acts or omissions committed by its vice-principals or managers as described above.

26.     Plaintiffs re-allege paragraphs 11 through 25 of this Complaint and say that Defendants are also liable for the gross negligence of their employees, which include at least Mattucks and Nichols, as they authorized, ratified or approved of the acts or omissions they committed as described above.  Alternatively, Mattucks and Nichols were vice-principals of Defendants when they acted to carry out the non-delegable duty of furnishing a reasonably safe place to work when transporting Barrett to or from Defendants' job site, which Mattucks and Nichols failed to do. Mattucks was also a vice-principal of Defendants because he was a supervisor and manager with authority to employ, direct and discharge Defendants' employees or because Defendants had entrusted Mattucks with a department or division of Defendants' business.

27.     Plaintiffs re-allege paragraphs 11 through 26 of this Complaint and say that Plaintiffs are entitled to recover exemplary damages against Defendants in a fair, just and adequate amount of money to be determined by the trier of fact as a consequence of the grossly negligent acts or omissions attributable to Defendants as described above which brought about the tragic, needless and untimely death of Barrett.

## CONCLUSION

28. Because of all the above and foregoing, Plaintiffs have been damaged in a sum exceeding the jurisdictional limits of this Court.

## JURY DEMAND

29. Plaintiffs demand a trial by jury for all issue so triable.

## PRAYER

WHEREFORE, Plaintiffs pray that Defendants be summoned to appear and answer herein as required by law and that upon final adjudication of this action, Plaintiff recover of and from Defendants exemplary damages in such sums as they may be shown to be reasonably entitled under the law and evidence introduced at the time of trial, together with pre-judgment interest, post-judgment interest and court costs and for such other and further relief, either general or special, as the Court deems appropriate and fair and to which Plaintiffs may show themselves justly entitled, either at law or in equity.

Dated:  December 20, 2013

Respectfully submitted,

*Andy Tindel w/ permission of Lead Attorney*

Stafford Davis
Texas Bar No. 24054605
THE STAFFORD DAVIS FIRM, PC
305 South Broadway, Suite 406
Tyler, Texas 75702
Tel: (903) 593-7000
Fax: (903) 705-7369
Email: sdavis@stafforddavisfirm.com

Andy Tindel
Texas Bar No. 20054500
MT² LAW GROUP
MANN | TINDEL | THOMPSON
112 East Line Street, Suite 304
Tyler, Texas 75702
Tel: (903) 596-0900
Fax: (903) 596-0909
Email: atindel@andytindel.com

ATTORNEYS FOR PLAINTIFFS